UTICA,
October, 1822.

ADAMS
v.
OAKS.

ADAMS and BARNUM, Overseers of the Poor of the Town of BANGOR, *against* OAKS.

Where an Overseer of the Poor, who had been summoned by two Justices to appear and answer to a complaint against him, for not taking care of a *sick and lame pauper*, upon request and notice, &c. according to the 16th section of the act for the relief and settlement of the poor, (1 *N. R. L.* 279. 284. sess. 36. ch. 78.) neglected to appear, or to show cause, &c., and the Justices thereupon issued a *distress warrant*, to levy the amount of the expense of relieving and supporting the pauper, on the goods and chattels of such Overseer; and which was, accordingly, executed: *Held*, that he had no right of appeal to the General Sessions of the Peace; such a judgment, by default, being equivalent to a judgment by confession.

Where a father gains a settlement in a town, by the payment of taxes for two years, his infant child, though not residing with him, or under his immediate charge or control, has a *derivative* settlement in the same town with his father.

IN ERROR, on *certiorari,* to the General Sessions of the Peace of *Franklin* county.

It appeared from the return, that on the 11th of *May,* 1821, a warrant was issued by two Justices of the Peace, of *Franklin* county, reciting, that one *Cyrus Potter,* a pauper, on the 19th of *March,* then last past, was taken sick and lame, in the town of *Bangor,* so that he could not be removed : that in consequence thereof, the town of *Bangor* had incurred expenses to the amount of 30 dollars and 24 cents : that they, the said Justices, had adjudged, that his last place of legal settlement was in the town of *Dickinson,* in that county : that due notice had been given to the defendant, one of the overseers of the poor of *Dickinson,* to take care of, and provide for said pauper, which he had neglected to do : that on application of the plaintiffs, they had caused a summons to be served on the defendant, to appear and answer to the complaint : that he had made default in appearance, and had shown no cause, &c. ; and thereupon they commanded any constable of the town of *Dickinson* to levy and collect the above sum, of the goods and chattels of the defendant ; and to pay the same to the Overseers of the Poor of the town of *Bangor ;* which warrant was executed.

The defendant appealed to the Sessions ; and the first question was, whether he was not concluded, by his omission to appear, according to the summons before the Justices, previous to the issuing of the warrant ? It was admitted, that he had been duly summoned, and had not appeared to show cause before the Justices. The Sessions overruled the objection, and decided, that the merits of the whole case were open to inquiry on the appeal.

An examination was then gone into, by which it appeared, that the town of *Bangor* was formed by a division of

the town of *Dickinson*, in 1812; that *Andrew Potter*, the father of the pauper, was an inhabitant of the original town of *Dickinson*, before the division; and then owned a farm, and resided in that part of *Dickinson* which now forms the town of *Bangor*; that the father was taxed, and actually paid taxes for two years, as a taxable inhabitant, on his land; to wit: one year's tax, *previous* to the division of the town, which he paid to the collector of *Dickinson*, in 1811; and one year's tax, which was assessed *after* the division, and paid by him to the collector of *Bangor*, in 1815. It also appeared, that the father had removed from *Bangor* into *Dickinson*; and it was admitted, that he was assessed *there*, in 1816, and paid the tax there in 1817. The plaintiffs also proved, by the collector of *Dickinson*, that the father was assessed there in 1818, and had paid the tax in 1819; but this testimony was objected to, on the ground, that the assessment roll and tax list ought to be shown; and the objection was overruled. The pauper was of full age, (about 22 years old,) when he became so chargeable; and it appeared, that when he was 17 years old, his father executed an instrument of writing to him, whereby, for the consideration of $50, he released his son from all claim to his future services; and permitted his son to work and contract for himself, and go where he pleased, relinquishing all parental rights and control over him.

The son had, accordingly, roved into *Vermont* and *Canada*, and was a vagabond, when taken sick and lame in *Bangor*.

The Sessions quashed the warrant of distress, and ordered the Overseers of *Bangor* to refund to the appellant 33 dollars and 82 cents; being the amount of the money collected on the warrant, with interest and fees; and further ordered, that the respondents pay to the appellant 17 dollars and 65 cents, for the costs of the appeal.

On the return to the *certiorari*, the cause was submitted to the Court, without argument.

PLATT, J. delivered the opinion of the Court.

The 17th section of the " act for the relief and settlement of the poor," (1 *N. R. L.* 279. 285.) gives an appeal to

"every person, who shall think himself aggrieved by any judgment or order, of any Justice or Justices," &c. But I incline to the opinion, that the appellant was concluded from his appeal, by omitting to appear and defend himself before the Justices who issued the warrant. In making an adjudication, that the pauper was settled in a particular town, with a view to an order of *removal* merely, no notice is required to be given; it is a proceeding *ex parte.* The Court of Sessions is the first *forum* in which the matter can be litigated by the Overseers of the adverse town. But where the proceeding is with a view to a *distress-warrant,* for the sustenance of the pauper, the reason of the case is varied. In directing the distress-warrant to issue in such case against the Overseer of the town properly chargeable, the statute is silent as to previous notice by summons; (1 *N. R. L.* 284. s. 16.) but on common law principles, such notice is held to be necessary, before the Overseer can be personally charged by process in the nature of an execution. If the appellant had appeared on the summons, which was to show cause why a warrant of distress should not issue against him, he would not have been confined, in making his defence, to the mere fact, that he was not an Overseer of the Poor, or that he had already paid the sum required. He might have defended himself, on the ground, that the pauper had no legal settlement in the town of *Dickinson,* of which he was Overseer. When the law allows him the privilege of being summoned in such case, it imposes on him a corresponding duty; which is, that if he has any ground of defence, he shall appear and prove it, in the primary Court, having cognizance of the matter. Suppose the defence had been, that no expense had been incurred on account of the pauper, or that he (the Overseer) had already paid such expense? Can it be tolerated, that he may neglect to appear, and after the warrant of distress has been levied, and the money paid over, then litigate the whole matter on appeal? It would pervert the right of appeal, which implies an actual previous litigation in the tribunal appealed from. To allow him to pass by the inferior tribunal, unnoticed, would be to convert the *appellate* into an *original* jurisdiction. A judgment by default, for want of appearance, is, for this

purpose, equivalent to a judgment on confession. This doctrine is well settled in the higher Courts, without any statute provision for that purpose ; and I perceive no reason, why it should not be applied to all judicial proceedings, where an appeal is allowed.

If I am correct in this point, it is decisive of the case, in favour of the plaintiffs in error. But on the merits, as disclosed in the Sessions, I think the judgment of the Court below was erroneous. The proof shows, that the father of the pauper gained a settlement, by paying taxes for two years, in *Dickinson*, *after* the division of that town ; and, under the circumstances of the case, the pauper had a *derivative* settlement, *identified* with that of his father ; and the son had acquired no other. The contract, whereby the father attempted to release his infant son from all parental charge and control, was absurd, and can have no effect upon the question before us. The law determines the relation between a father and his infant children, which it is not in their power to change.

The conclusion is, that the judgment of the Court of General Sessions ought to be *reversed.*

Judgment of the Sessions reversed.