## MALTBY v. GREENE.

December, 1864.

The rule that an appeal does not lie from a judgment by default, pre-
cludes an appeal to the supreme court from a judgment by default in
a county court, especially ,where the objection is a defect in the plead-
ings or papers in the nature of pleadings.*

The proper remedy in such a case is by motion to the court in which the
action is pending.

In mechanics' lien cases arising under the statute of 1844, c. 305, the
court acquires jurisdiction by the personal service of the notice to the
opposite party within the time fixed by the statute, and a personal
judgment should not be reversed because no lien was established, if
it appear by the recitals that the incipient proceedings to create a lien
were taken.

On a default, the judgment in such a proceeding may be personal, like a
judgment in assumpsit.†

John Maltby commenced a proceeding in the Erie county
court against Ann R. Greene, for the enforcement of a me-
chanic's lien, filed under *L.* 1844, c. 305.

The record showed that pursuant to the mechanic's lien law
of 1844, the plaintiff on December 28, 1858, filed with the clerk of
Erie county specifications of materials furnished to defendant,
stating the price; and that within thirty days after furnishing
the materials or completing the work, notice of such specifica-
tions filed, was personally served on defendant, requiring her to
appear' on the fourth Monday of March, 1859, and submit to an
accounting. This notice was served more than twenty days be-
fore the time specified for appearance, but defendant at no
time appeared; and on April 22, 1859, on proof of these facts,

---

\* And this rule cannot be evaded by the consent of the parties. Mc-
Mahon *v.* Rauhr, 47 *N. Y.* 67.

† Compare, for the construction of other lien laws, Barton *v.* Hermann, 8
*Abb. Pr. N. S.* 399, Grant *v.* Van Der Cook, *Id*, 455. In Donnelly *v.* Libby,
1 *Sweeny*, 259, the authority of the case in the text is questioned, in
ignorance probably of the fact that this court concurred in both the
opinions above given.

Maltby v. Greene.

defendant's default was entered and a judgment granted directing that a writ of inquiry issue to assess the damages. They were assessed at eighty-three dollars and eighty-four cents and costs, and final judgment entered. All these facts appeared by the record.

The act of May 7, 1844, declared that any person performing labor or furnishing materials for building, altering or repairing any house or other building, in the several cities of the State (except the city of New York), by virtue of any contract with the owner thereof, shall have a lien for the value of such labor and materials, upon such house or building, and upon the land upon which the same stands (§ 1); and it prescribes the mode of creating such lien, its duration, and how it may be discharged. Sections 2 and 3. The person performing the labor, or furnishing the materials, is to cause specifications to be drawn up, and file the same in the office of the clerk of the county in which the building or premises are situated, and serve notice thereof personally on the owner or his agent. The filing of the specifications, and serving notice thereof, in respect to any labor performed, or to be performed, or materials furnished, or to be furnished, in building, altering or repairing any house, or other building, in the city of Buffalo, may be made at any time prior to thirty days after the labor shall be performed, or after the house or building or the alterations or repairs of which shall be completed; and the filing of the specifications and service of the notice creates a lien in favor of the person performing such labor, or furnishing such materials, for the amount of the labor performed and materials furnished, whether performed or furnished before or after such filing and service. _L._ 1851, c. 517. The clerk of the county is directed to keep a book, to be called "The mechanics' and laborers' lien docket," in which shall be entered the name of the owner, and opposite thereto the name of the person claiming the lien, the lot or street on which such work is to be done, or materials furnished, and the time of filing such specifications. The lien created takes effect from the time of filing and service of notice, and continues for one year thereafter, but may be discharged on the docket at any time by the clerk, on the production to and filing with him a certificate, signed by

III—10

the person having the lien, and duly acknowledged and proved, that the claim for which such lien was created is satisfied and discharged. Section 3.

The next four sections of the act prescribe the manner of enforcing or bringing such a lien to a close, by a proceeding in a county court, or justice's court.

*The supreme court*, at general term, on appeal, overruled several objections to the proceedings, which are stated in the opinion of Wright, J., and finally dismissed the appeal, on the ground that a judgment by default is not appealable (citing Dorr *v.* Birge, 8 *Barb.* 351; S. C., 5 *How. Pr.* 323). Defendant appealed to this court.

*Riley Saunders*, for defendant, appellant;—Insisted on the same objections, citing *Crary Pr.* 210, 214, 255, 575.

*Charles Daniels*, for defendant, respondent.

Ingraham, J.—That an order dismissing an appeal to the general term of the supreme court is appealable to this court, was settled in Bates *v.* Voorhees, 20 *N. Y.* 525. It becomes, therefore, necessary to inquire whether an appeal will lie from the judgment entered in the county court, by default of the defendant for not appearing there.

This question was referred to by Selden, J., in Briggs *v.* Bergen, 23 *N. Y.* 162, in which he says, in regard to striking out a sham pleading: " The suit is left in the same condition as if no answer had been put in. In such cases no appeal will lie from the judgment, it having been obtained through the default of the defendant."

This question was fully examined by Parker, J., in Dorr *v.* Birge, 8 *Barb.* 351; S. C., 5 *How. Pr.* 323, citing various cases previous to the Code to show that, under the old system of practice, a writ of error would not lie from a judgment obtained by default. The intent of the Code was the same as had been the previous practice. It allowed an appeal from a judgment of the court, but by that was intended a decision of the court made upon points submitted to them, or questions raised before that court.

In Jones *v.* Kip, 7 *N. Y. Leg. Obs.* 91, it was held, in the New York common pleas, that no appeal would lie to the general term of that court from a judgment by default.

In Perkins *v.* Farnham, 10 *How. Pr.* 120, it was decided that an appeal would not lie from a judgment entered on a stipulation, with a view to enable the party to appeal.

In Hunt *v.* Bloomer, 13 *N. Y.* 341, 343, an appeal was dismissed, upon the ground that the record did not show any exceptions taken at the trial; and in Otis *v.* Spencer, 16 *N. Y.* 610, the judgment was affirmed, because no case had been made in the court below. From these cases, I conclude that no different rule exists under the Code than that which was established under the old system of practice. And this court has held, in Thurber *v.* Townsend, 22 *N. Y.* 517, that the power of review conferred by the Code must be the same as that formerly obtained by writ of error, and that there was no reason why it should be other or greater.

I think, therefore, from the authorities above cited, that in no case of judgment by default can there be an appeal to an appellate tribunal; but that the agrieved party must seek relief, if he be entitled to any, by motion to the court in which the action is pending. If there was any error in the service of process, the court where the action was pending could have corrected the error on motion. If the pleadings were defective, the party aggrieved had a remedy by demurrer, and on that he might have appealed to the appellate court.

The reason for these rules is given by PLATT, J., in Adams *v.* Oaks, 20 *Johns.* 282. When the law allows a defendant the privilege of being summoned, it imposes on him a corresponding duty, which is, if he has any ground of defense, he shall appear and prove it in the primary court having cognizance of the matter. To allow him to pass by the inferior tribunal unnoticed, would be to convert the appellate court into one of an original jurisdiction. A judgment by default is, for this purpose, equivalent to a judgment by confession. This doctrine is well settled in the higher courts, and I perceive no reason why it should not be applied to all judicial proceedings where an appeal is allowed.

The conclusion arrived at on this branch of the case disposes

of this appeal without the necessity of examining the alleged
defects upon which the appeal was taken. They were all
matters which should have been brought to the notice of the
court below. Many of them, if they were erroneous, would
have been corrected on the trial, and would not have been any
grounds for sustaining an appeal. It can hardly be considered
a safe or proper system to allow a party to rely on a defective
pleading in the court of original jurisdiction, and seek to take
the benefit of such defect on appeal where the court could not
correct the error. On the contrary, I concur in the opinion
above cited, that in such cases the default in not appearing is
to be considered a confession of judgment, from which the de-
fendant cannot appeal. The order should be affirmed.

WRIGHT, J.—This is an appeal from an order of the supreme
court dismissing an appeal from a judgment of the Erie county
court, rendered by default in a proceeding under the mechanics'
lien law (*L.* 1844, c. 305). All that the supreme court
had before it was the record of the judgment of the
county court for the amount of the claim of the party furnish-
ing materials.

The supreme court dismissed the appeal on two grounds:
first, that it would not lie to review a judgment rendered by
the county court by default; and, second, that if this were
otherwise, there was no error or irregularity in obtaining the
judgment, or, at least, none of a jurisdictional nature. The
order, I think, is right on either ground, but it is, perhaps,
only necessary to allude to the latter one.

[The learned judge here recited the first three sections of
statute above stated.]

The next four sections of the act prescribed the manner of
enforcing or bringing such lien to a close. It is by a proceed-
ing in a county court, or justice's court, distinct and inde-
pendent of that creating the lien between the claimant and the
owner, to settle the amount due, and obtain a judgment there-
for. As was said in Freeman *v.* Cram, 3 *N. Y.* 305: "The
court is not required to adjudicate upon the validity of the
lien, or the time of its commencement. The judgment is to be
rendered and enforced, in all respects, like a judgment in an

action of assumpsit. . . The judgment record is not evidence of the existence of the mechanics' lien, of the time of its commencement, or of the quality or description of the real estate which it affects. It could not be made so against third persons not parties to the suit. In case of the enforcement of the lien by an execution, and sale within the year, if a dispute should arise between the purchaser and some third person, with respect to the priority of their respective rights, the purchaser would be required to prove the existence of the mechanics' lien by evidence not contained in the judgment record." The most that can be claimed is, that there is a statutory implication that the summary proceeding for obtaining judgment for the amount due, must be instituted before the lien ceases.

The court acquires jurisdiction of the subject matter, and of the parties, by either the owner of the building, or the laborer or material-man, serving personally on the opposite party, a notice, requiring him to appear in the county court or justice's court of the county in which the building is situated, at a time specified in such notice, not less than twenty days from the service thereof, and submit to an accounting and settlement in such court of the amount due or claimed to be due, or for the labor performed or the materials furnished.

In this case the claimant served the required notice on the owner to appear in the Erie county court, on the fourth Monday of March, 1859; and at the time, served on her a bill of particulars of his claim, accompanying the same with a notice to produce a bill of particulars of any offset within ten days thereafter. The owner did not appear at the time and place specified, nor furnish any bill of particulars of any offset; and on April 22, 1859, her default was entered, and a writ of inquiry ordered to issue. The writ was executed and inquisition returned, assessing the claimant's damages at eighty-three dollars and eighty-four cents, and an order for judgment final entered thereon on April 26; and on April 30, judgment for that amount, with costs, was signed and filed. The proceeding in the county court was strictly in accordance with the statute, which provides that in case the owner shall not appear and submit to an accounting and settlement at the time and place specified in the notice, his default shall be entered; a writ of

inquiry and inquisition may issue to the sheriff of the county, to be executed; "and judgment shall be entered upon the same, and execution shall issue for the enforcement of the claim so adjudicated and established in the same manner as in cases upon judgments in such courts, in actions of assumpsit." Sections 4, 5, 6.

It is not and cannot be claimed by the appellant, that the supreme court erroneously dismissed her appeal, unless from the face of the record of the county court, it appears that that court had no jurisdiction of the subject matter, or entered a judgment unauthorized by the statute. Neither of these things appeared. The notice to appear and account, &c., gave jurisdiction, and the proper judgment was rendered and entered.

The point is made that it does not appear by the record that the incipient proceedings to create a lien were ever taken. It is not required that it should; and following the statute directions as to the accounting, and rendition and entry of judgment, the fact would not necessarily appear by the record. But it does, in fact, appear both by the recitals in the writ of inquiry, and in the judgment.

Again, it is said that by the record it appears that the notice requiring the defendant to appear and submit to an accounting and settlement, was not served twenty days before the time specified for the appearance in the county court. It does appear by the copy affidavit of the service of the notice filed when the defendant's default was entered (as it is printed in the case), that the service was less than twenty days before the time designated for the appearance, accounting and settlement; but the order for the defendant's default, in reciting the proofs on which it was granted, states that the notice was served more than twenty days prior to the time specified for appearing, and to the same effect are the recitals in the writ of inquiry and in the judgment. Undoubtedly, the statement of the date of service is erroneously set forth in this affidavit. The notices are dated February 22, 1859, and the time designated for appearance was the fourth Monday of March following. The affidavit states the service to have been on March 28, the day for appearing. It is most probable that the month of service was February in-

stead of March; and, either that in the affidavit, March was, by mistake, inserted for February, or that the affidavit is given incorrectly in the case. At all events, looking at the whole record, it does not appear, as the appellant's counsel insists, that the notice and the bill of particulars were served on the defendant the very day she was required to appear in court.

Again, it is claimed that the proceeding and judgment warranted by the statute, are *in rem* against property, and not against the person; and that the entry of a personal judgment was unauthorized. There is nothing in this point. The statute provides, that in case of a default, a writ of inquiry may issue for the assessment of the damages, "and judgment shall be entered upon the same, and execution shall issue for the enforcement of the said claim so adjudicated and established, in the same manner as in cases upon judgments in courts of common pleas and justices' courts, in actions of assumpsit;" and where the parties appear, the cause "shall be governed, tried, and the judgment therein enforced, in all respects, in the same manner as upon issues joined and judgments rendered in actions of assumpsit in the said court." Sections 6, 7. Judgments in actions of assumpsit are, in form, personal, and the manner of enforcing them is by execution. When the judgment is to be enforced in the same manner, it can hardly be claimed that it should be different in form from the ordinary judgment in assumpsit. The mode of enforcing it indicates what its form should be. In Freeman v. Cram, 3 *N. Y.* 305, it seems to have been the construction of the statute by this court, that the judgment is to be rendered in form against the defendant, who is personally liable for the debt, and is a lien upon all the defendant's real estate, continuing for ten years against purchasers, and longer against the defendant himself.

The record of the county court, therefore, discloses no error, jurisdictional or otherwise. But after jurisdiction was acquired, had there been irregularities, the place to correct them was in the county court, and not on appeal. If the appellant had any cause of complaint, she should have moved in that court, where the proceedings, if not strictly regular, could have been corrected, and where amendments would have been permitted

if necessary, for the purpose of correcting any mistakes in the papers.

The supreme court examined the record, and, finding no error or irregularity in the proceedings going to an entire want of judgment in the county court, dismissed the appeal. Perhaps the better course would ,have been to have affirmed the judgment. But the defendant's right of appeal to this court was equally secured by either practice.

The order should be affirmed.

A majority of the judges concurred in these opinions, holding, both that the order was not appealable, and also, that it was right upon the merits, and therefore, ought properly be affirmed.

Order affirmed, with costs.