A. S. PAUL ET AL., APPELLANTS, *v.* E. J. ARMSTRONG, RESPONDENT.

A writ of *certiorari* is not inhibited to a party aggrieved in all proceedings or actions wherein a right of appeal is given.

An appeal will not lie from a judgment by default. Per Brosnan, J.

The Probate Court can only try the issues that have been tried in the Court below.

A Court of appellate jurisdiction cannot reverse a judgment produced by the voluntary act of a party.

Where a statute prescribes the mode of acquiring jurisdiction, that mode must be complied with or the proceedings will be a nullity.

A demand of possession must be made by the landlord before bringing suit against his tenant for holding over. Such demand is indispensable, and is as necessary to be made before suit, as that the relation of landlord and tenant should exist.

Judgment upon confession cannot be entered in a Justice's Court in an action for forcible entry and unlawful detainer. Per Brosnan, J.

Courts of Justices of the Peace being of special and limited jurisdiction, can take nothing by intendment or implication.

Consent of parties cannot give jurisdiction. Per Brosnan, J.

The Probate Court has the power to issue a writ of rerestitution, in an action of forcible entry and unlawful detainer, brought before it on *certiorari*.

APPEAL from the Civil Probate Court of Storey County, Territory of Nevada, Hon. L. W. FERRIS, presiding.

The facts appear in the opinion of the Court.

*Robinson & Foster*, Attorneys for Appellants.

This is a proceeding on *certiorari*, by which a case which had been determined by a magistrate was brought before the

Civil Probate Court; the case was one begun under the Act concerning forcible entry and detainer, for an enforcement of forfeiture of a lease by a landlord against his tenant for breach of conditions.

The proceeding by *certiorari* is not the proper remedy. Section 403 of the Practice Act, page 384, statutes of 1861, provides that this writ of review can only be granted in cases where there is no appeal.

Could an appeal be taken in this case from the magistrate to the Civil Probate Court?

Respondent claims that there could not because the judgment below was a nullity. In support of this view, a case in 24 Wendell, 251, is relied on. That was a case in which was involved the conduct of ministerial officers solely, over a subject of which they had no cognizance whatever.

But the point touching the action of ejectment used as an illustration by the Judge who gave the opinion in Wendell, has received an express determination in the Courts of California. *Gray et al.* v. *Schupp,* 4 Cal. 185, in which case the Court say: " The District Court erred in taking jurisdiction of the case, and the error complained of [excess of jurisdiction] might have been corrected by an appeal to the County Court."

In *Peabody* v. *Phelps,* 7 Cal. 53, an appeal was sustained by the Supreme Court from a judgment that was void. To the same effect are the following cases: (*Zander* v. *Coe,* Id. 230; *People* v. *Peralte,* 3 Cal. 379; *Caulfield* v. *Hudson,* Id. 389; *Hernandez* v. *Simon,* Id. 464; *Ried* v. *McCormick,* Id. 342; 2 Kernan, 593.) There are a multitude of cases in the reports of decisions of every State in the Union, where the appellate Court has entertained appeals and decided cases on the ground that the inferior Court had no jurisdiction. Of this character was the celebrated Dred Scott decision, 19 How. U. S. R. 393.

Wherever any case, as that in 24. Wend., a failure of jurisdiction is spoken of in the Superior Court from the want of jurisdiction in the inferior Court, jurisdiction to adjudicate on the merits is referred to, and so far the doctrine is true.

The following authorities establish the point fully, that the remedy by appeal is a proper course to rectify the error of an inferior Court, in rendering judgment by default, when there

has been either no service of summons or a defective one. (*Joyce* v. *Joyce*, 5 Cal. 449; *Burk* v. *Scranton*, 1 Cal. 417; *Parker* v. *Shepherd*, Id. 132; *Schloss* v. *White*, 16 Cal. 65; *Clary* v. *Hoagland*, 13 Cal. 174; 7 Cal. 280; *Sterns* v. *Ross*, 1 Id. 97; *Logan* v. *Hillegass*, 16 Id. 201.)

The purpose for which the above authorities are cited is to show that whenever a tribunal has jurisdiction of the subject matter, but has not become possessed of jurisdiction of the person for want of due service, an appeal will lie from the judgment rendered by the Court below. But admitting that the writ of *certiorari* is the proper mode of reviewing a judgment where an inferior Court has not jurisdiction of the person, the next inquiry is, what is to be tried under this writ?

. The 409th section of the Practice Act, page 385, declares that "the review upon this writ shall not be extended further than to determine whether the inferior tribunal, Board or officer, had regularly pursued the authority of such tribunal, Board or officer."

The inquiry is limited, then, entirely to the determination of the question of jurisdiction of the inferior Court, and in this case (inasmuch as it is conceded by both parties that the Justice has jurisdiction of the subject matter), whether by the proceedings he had obtained jurisdiction of the person so as to make the judgment binding on Armstrong.

Armstrong constituted and appointed Foster his attorney to appear and confess judgment for him and in his name, waiving, in the same instrument, all summons and notice, and declaring that the acts of Foster in the premises shall be as binding as if made by Armstrong. Mr. Foster did appear and confess judgment, waiving summons and notice.

It is contended by respondent that the magistrate had no jurisdiction in the case because the Act under which the proceeding took place is a criminal statute, and that no consent of Armstrong, even if given in person, and no express waiver by him, could stand as a substitute for a strict compliance with the letter and provisions of the law. In answer to this we assert that whatever may be the law concerning a forcible entry or a forcible or unlawful detainer (and we deny the assertion and its consequences as touching these) touching this

Paul *et al. v.* Armstrong.

matter, we deny that the relations of landlord and tenant, or any of the consequences growing therefrom, are criminal, or have ever been so held.

Consent or waiver of summons gives jurisdiction over the person, though it cannot give jurisdiction over the subject matter. (*McLeran* v. *Schartzen*, 5 Cal. 70; *Smith* v. *Curter*, 7 Id. 587.)

It is likewise a rule equally universal, we apprehend, that an appearance by attorney is equally effectual, both by the common law and the express provisions of statute. (2 Cal. 281; *Holmes* v. *Rodgers*, 13 Cal. 201.)

Justices' Courts shall have jurisdiction of an action upon the voluntary appearance of the parties without summons. (Practice Act, secs. 479, 395 and 480.) It is, however, claimed that similar provisions are not embraced in the chapter of the same Act which treats specially of the proceedings by which this case was considered. The answer to this is found in the decision of the Supreme Court of California (9 Cal. 572), where it is held that the true construction of the Act is that the case must be governed by the provisions of the Act so far as they go, and as to other matters not embraced by the words of the Act, general rules governing the proceedings in these Courts will apply. The Probate Court gave a writ of re-restitution, for which no provision is made in the statute, and when the statute, by its special provisions, seems wholly to prohibit it. For the statute says that if the writ of restitution is not wholly executed when an appeal is taken, the parties in possession shall so continue until the appeal shall be determined. (Sec. 656, p. 426.)

Again, to show how wholly untenable the position occupied by respondent is, that a party cannot consent to waive any of the proceedings under the Act of forcible entry and detainer, the English decisions show that a party can waive, and frequently does waive the entire protection which that statute gives him, by contract, as was done in this case. (See Taylor's Landlord and Tenant, p. 353, sec. 532; 2 Platt on Leases, pp. 345-6-7.)

*Perley* and *DeLong* for Respondents.

In forcible entry cases an appeal is taken in the same manner as from a District Court to the Supreme Court. (Acts of 1864, p. 69.)

An appeal can only be sustained upon an agreed or settled statement, or upon a bill of exceptions.

Here, although there is a paper in the transcript purporting to be a statement, it is neither signed or settled by the Judge, neither is it agreed to by the parties. It is in fact no statement at all, and the Court cannot notice it for any purpose whatever. If this is stricken out there is no exception to the judgment or ruling of the Court, and the appeal is bound to be dismissed. (*Lynd* v. *Twist*, 3 Cal. 89 ; *Doyle* v. *Sewell*, 12 Cal. 425 ; *Paige* v. *O'Neil*, 12 Cal. 492 ; *Verment* v. *Shaw*, 4 Cal. 215 ; *Harley* v. *Young*, 4 Cal. 284.)

An appellate Court will not review the rulings of the Court below unless presented in proper form in a statement or bill of exceptions. (*Gunter* v. *Gary*, 1 Cal. 464 ; *Pierce* v. *Minturn*, 1 Cal. 471 ; *Wilson* v. *Barry*, 2 Cal. 56 ; *Moore* v. *Semple*, 11 Cal. 361.)

The Supreme Court cannot receive evidence otherwise than through the statement on the record. (*Visher* v. *Webster*, 13 Cal. 60.)

The judgment of the civil Probate Court upon the writ of *certiorari* ought to be affirmed for the following reasons :

*First*—The Court had power to issue the writ. (Prac. Act, sec. 403.) Also to render the judgment. (Prac. Act, 410.)

*Second*—If the judgment was properly rendered, it had power to award or issue the writ of restitution. No special statutory authority was necessary for this purpose. Wherever a Court sets aside or quashes an inquisition of forcible entry and detainer, and prior to doing this restitution had been had, re-restitution is awarded as a matter of course. (10 John. Rep. 307 ; 2 Caine's Rep. 98 ; 3 Pick. 32 ; 4 Bac. Ab. 334 ; 1 Caine's Rep. 124 ; *Kennedy* v. *Hamer*, 19 Cal. 374.)

But the Probate Court has express authority to issue all other writs and process necessary to the complete exercise of the powers conferred upon it by law. (Prac. Act, sec. 608.)

Power is conferred upon it by law, by this section, not only to issue the writ of *certiorari*, but all other writs necessary, etc.

If it has power to vacate the judgment, it must have power to make that judgment effectual. Hence the necessity of a writ of re-restitution, otherwise its decree or judgment would be powerless. The authorities are clear and uniform, and they have not been attacked or questioned by opposing counsel.

*Third*—The whole proceeding before Mr. Justice Atwill was a clear usurpation of authority. He never did acquire jurisdiction over the person, and he had no jurisdiction by law over the subject matter of the action. His judgment and writ of restitution were *coram non judice*, and *void* upon sundry grounds.

1st. No suit was ever commenced. A summons was necessary to the commencement of any action in a Justice's Court. This requisite could not be avoided except by the voluntary appearance of a party. (Prac. Act, sec. 480.) No appearance by an attorney is sufficient to obviate the necessity of a summons, even in an ordinary action of debt.

2d. In cases of forcible entry or forcible or unlawful detainer a summons is absolutely indispensable. (Prac. Act, sec. 64.) It must not only be isssued but it must be served. It cannot be made returnable in less than ten days. Service must be made by delivering a certified copy to the defendant, two days before the return day, and the return must be special. (Sec. 643.) None of these requisites were complied with.

3d. The Justice was required by law to hear, try, and determine the case. (Sec. 643.) This he failed to do. There was no hearing and no trial.

4th. No writ of restitution could be issued until after the defendant was found guilty. That was a necessary part of the judgment. It applies to all cases under the Act as well to cases of forcible or unlawful detainer as of forcible entry. (Sec. 648.)

*Fourth*—The complaint on its face shows that the plaintiffs had no cause of action whatever. It is radically defective, and is wholly insufficient to give the Court jurisdiction.

This complaint is founded solely on an alleged breach of a covenant in the lease. The covenant is that if the lessee paid his rent in legal tender, that should amount to a forfeiture of his lease. The breach alleged is not that he failed to pay in

gold, but that he paid in legal tender notes, commonly called greenbacks.

The lease is made a part of the complaint. It does not mention the word greenbacks.

Gold is legal tender as well as greenbacks. The Justice had no authority to allow of the lease being altered in one jot or tittle by any averment in pleading. If the plaintiff chose to sue upon the instrument they were confined to the four corners of it. They could not reform it in a Justice's Court.

The covenant itself is a void covenant, and would not be enforced by any Court. It is void as against public policy.

There was no law making any distinction between gold and greenbacks.

Conditions and covenants must not be inconsistent with each other. If the lessee was compelled to pay, he had a right to pay in anything, or any kind of money which the law recognized as legal tender. In the absence of all law making any distinction, can this Court legislate upon the subject and make a law for itself? It is not pretended that there is any law making any distinction whatever.

Again, forfeitures are construed strictly. The Court will not lend its aid in effecting a forfeiture by giving a construction beneficial to the person seeking to enforce it. Any man claiming a forfeiture must show and prove it, *stricti juris.* The letter of the contract does not involve forfeiture.

The breach alleged is no breach at all. It is alleged, not that he failed to pay his rent, but that he paid it in greenbacks.

Could the plaintiff accept the payment and at the same time claim or enforce a forfeiture?

If he could do this, then the forfeiture is made to depend upon his own voluntary act.

*Sixth*—The confession of Foster was wholly illegal, nugatory and void. It was insufficient to bring the defendant into Court or to make him amenable to its process, for the following reasons:

1st. Foster must have acted either as an attorney in fact or an attorney at law.

If he acted as an attorney in fact, his action is a nullity, on two grounds. First, he should have acted in the name of his

principal, but in this case he acted in his own name. The confession is the confession of Foster and not of Armstrong. Secondly, his power to act at all as the attorney in fact of Armstrong was revoked about a month before he acted. This revocation is in the hands of the Court, and by stipulation becomes a part of the record.

The Court will not intend or presume for him any other authority than the one he professes to act under.

This authority was revoked. The appellants deny that it was revocable, and the authorities are the other way. The power to Foster is a mere naked power coupled with no interest whatever. His interest was solely in the execution of the power.

See the following leading authorities on this point. (*Hunt* v. *Rousmainer*, 8 Wheat. 175; *Bergin* v. *Bennett*, 1 Caine's Cases in Error, 1; *Mansfield* v. *Mansfield*, 6 Conn. 562.)

If Foster acted as an attorney at law he acted without authority. He was never employed as an attorney.

This Court is now untrammeled by any antiquated decisions with regard to the unauthorized acts of attorneys binding clients who have never employed them.

This Court should now lay down the true rule. This is a case worthy of such an example.

The old doctrine rests wholly upon two or three anonymous cases in Salk. and Keble.

The doctrine never was a part of the common law, but arose probably in some ancient rule of Court. It has been entirely overthrown of late years, not only in New York but in England. See the following authorities: (*Denton* v. *Noyes*, 6 John. 300; *Campbell* v. *Bristol*, 19 Wend. 101; *Allen* v. *Stone*, 10 Barb. 557; 16 How. Pr. R. 149; *Doe* v. *Davis*, 23 Eng. C. L. 344; *Bailey* v. *Bucklain*, 1 Excheq. R. 1.)

The doctrine now is, that where there has been no service of process the unauthorized appearance of an attorney does not bind a party.

But if a party has been served with process, and a solvent attorney appears without authority, the Court will let the judgment stand. The total insolvency of Foster is changed, and is not denied in any part of the record.

If Foster acted under the lease he must be confined strictly to the authority given.

He was not authorized to do any act except to appear and to confess judgment. He was not authorized to waive anything, but he did waive summons, time and notice. He could not make these waivers—there was no demand of possession in writing. This was not waived by anybody. The defendant most clearly reserved to himself the right to make these waivers and he did not authorize Foster to make them.

*Seventh*—No judgment by confession could be entered in a case of forcible detainer by a Justice of the Peace. Consent may do away error, but it cannot give jurisdiction.

Section 610 defines the jurisdiction of Justices. They have no power to enter any judgment by confession, except, First, Upon a confession by the defendant himself, in writing. Secondly, Upon a demand for money where the amount does not exceed one hundred dollars.

The defendant himself could not have confessed a judgment in a case like this, but it is beyond all controversy that he could not authorize Foster to confess it.

Judgment cannot be confessed under the code in an action of trespass. (*Boutel* v. *Owens*, 2 Sandf. 654.)

When the statute prescribes a mode of doing a thing, it cannot be done in any other manner. *Expressio unius est exclusio alterius* is a universal maxim in the construction of statutes.

Where the statute says that a judgment may be entered upon confession of a defendant, it excludes a confession by an attorney. Where it says it shall be for a sum not exceeding one hundred dollars, that means upon a debt and not upon a trespass. These principles of construction are obvious.

Justices' Courts are Courts of limited and inferior jurisdiction. They must show authority for every act. Jurisdiction must clearly appear upon the face of their proceedings or their judgments are nullities. There is no presumption or intendment of law in their favor. Where the statute prescribes a mode of doing a thing it cannot be done in any other manner. (*Swan* v. *Marsh*, 12 Cal. 284; *Jones* v. *Reed*, 2 John. Cases, 20; *Benjamin* v. *Benjamin*, 1 Seld. 385; *Coffin* v. *Tracy*, 3

Caine's R. 129; 3 Comstock, 12; 5 Selden, 35; 3 Abbott's Dig., p. 563, arts. 29, 35, 37 and 40.)

Confessing a judgment in a Justice's Court cannot give the Court jurisdiction. (3 Caine's R. 129; 1 John. Cases, 20.)

In forcible entry cases, the Court has no power to try except in the precise mode pointed out by the statute. The statute itself being in derogation of the common law must be construed strictly. (*Benjamin* v. *Benjamin,* 1 Seld. 385.)

It was held in this case that a jury trial could not be waived by consent, in a forcible entry case, notwithstanding the statute provided for waiver of jury trials generally.

In *Bloom* v. *Burdick,* 1 Hill, 141, the Court say: " That a statute authority by which a man may be deprived of his estate must be strictly pursued, and that the want of jurisdiction rendered all judgments void. (3 Abb. Dig., pp. 562 and 563, Arts. 3, 4, 5, 6, 14, 22, 23, 29, 35, 36, 39, 40; 3 Abb. Dig., p. 629, Arts. 741, 742, 743, 747.)

I now propose to consider some of the objections urged by counsel to the judgment of the Court below:

1st. That no summons was necessary to be issued in the first instance, and that voluntary appearance and pleading is equal to issuance and service of a summons.

This argument is founded on sec. 480, Prac. Act. But the section has no application to this case.

Wherever that part of the statute concerning forcible entry or detainer is clear and explicit, its provisions must govern. Wherever it is silent, the general provisions of the statute concerning practice and proceedings in Justices' Courts would apply.

I contend, further, that even under section 480, no appearance by attorney could waive summons. It could only be done by the voluntary appearance and pleading of a party. Justices must strictly follow the authority given.

2d. That there has been this voluntary appearance and pleading of the party. This assumes the point in controversy. Foster was not a party, or the attorney-at-law of the party. There is no shadow of foundation in the statute for saying that such an appearance could waive issuance of summons or personal service therof.

3d. It is contended that all the antecedent formalities of the statute before the Court could acquire jurisdiction were waived.

To this I reply, that they could not be waived. No waiver can give a Court jurisdiction.

Counsel admits that a complaint in writing could not be waived. This is giving up the whole point, for that is no more imperative than any of the other parts of the Act.

He was driven to this upon a question by the Court: Why the Justice could not have entered judgment upon that confession without a complaint?

Why he could not as well dispense with that as all the other preliminaries?

4th. It is contended that Armstrong himself agreed to waive all these formalities in the lease. If this were true it would not aid appellants' case.

They never served Armstrong with process. He had no day in Court. He should have had opportunity to show that he had not violated his lease. That the contingency had never arrived upon which his waivers were to attach. Can it be contended that Paul and Bateman were to be exclusive judges as to when a forfeiture had accrued? Was the mere fact that they chose to commence an action to be plenary and indisputable, evidence that a breach of covenant had arisen?

If this were so, then if Armstong had paid every dollar in gold, they might just as easily have done in that case what they have done in this. They could not be the sole judges in their own case.

A party may take an appeal where he has expressly stipulated not to do so. (*Muldrow* v. *Norris*, 2 Cal.; *Dudley* v. *Mayhew*, 3 Comstock, 12; 3 Caine's R. 129.)

The case of *Beach* v. *Nixon*, 5 Seld. 37, is an important authority in this branch of the case. It shows clearly that such waivers, or stipulations in leases, give no authority to Justices in summary proceedings of this character.

5th. It is argued that no *certiorari* would lie in this case, on two grounds: First, because an appeal would lie; Second, because an appeal had actually been perfected.

Neither of these grounds is tenable. If the judgment was

void no appeal lies, and a writ of *certiorari* was the appropriate remedy. (24 Wend. 251.)

Want of jurisdiction in the Court below would be equally a want of it in the appellate Court. (24 Wend. 251; see authorities cited in this case.)

But no appeal could be effectual in this case, for the trial would be *de novo*, and there being no issues of fact joined below, there would be nothing to try.

A party cannot appeal from a judgment which he himself has confessed. He must have raised the issues of fact in the Court below. (10 Cal. 19, 20; 11 Cal. 328.)

But if Armstrong could have taken an appeal, it was not prosecuted but abandoned, and dismissed before the writ of *certiorari* was issued. The Justice's docket shows this. The only possible remedy which was allowed to Armstrong was to apply for a new trial in the Justice's Court.

This he did, but the plaintiff ousted the Justice from proceeding further upon their writ of *certiorari*.

This left him no alternative but to prosecute his writ of *certiorari*, and have the whole proceedings declared null and void.

Opinion by BROSNAN, J.

On the 25th day of March, 1864, Paul and Bateman, the appellants, demised the International Hotel in Virginia City to the respondent Armstrong for one year, at the yearly rent of $14,400, payable monthly in United States gold or silver coin, at the rate of $1,200 per month in advance. The lease contains conditions that upon non-payment of rent as therein stipulated, "or if the rent be paid in legal tender on the part of the lessee," the lessors should have the right to re-enter, etc. The lessee also agrees to waive all demand in writing, or demand of any kind, for rent, when the same may become due; and waive all notice to quit or pay said rent. It is further covenanted on the part of the lessee, that should the lessors "deem it necessary to commence legal proceedings to obtain possession for any ground of forfeiture upon which the right of recovery might depend," in such case the lessee "waives all summons

and notices, and authorizes the law firm of Robinson & Foster, or either of them, to enter the appearance and to confess judgment therefor." The lessee did not pay the rent for the month of July in gold or silver, but did pay it in legal tender notes. For this breach a right of re-entry is claimed.

On the 26th day of August, 1864, the appellants instituted suit before Atwill, Justice of the Peace, and filed a complaint under the forcible entry and unlawful detainer Act, to recover possession of the demised premises. The complaint contains no averment of a demand of rent or possession before suit, but refers to the lease as part thereof. The breach, as alleged, is " that the defendant did not on the 25th day of July, 1864, pay to the plaintiffs the sum of $1,200 in United States gold or silver coin for one month's rent. But on the contrary, he did on that day pay the amount of rent then due in United States legal tender notes."

On the day the complaint was filed, J. C. Foster filed in the Justice's Court a writing entitled in the action, and signed by him as attorney for defendant. It is in the following words:

"Now comes J. C. Foster, one of the firm of Robinson & Foster, attorney for defendant, E. J. Armstrong, and hereby enters the appearance of the defendant, waiving summons, notice and time, and consents that judgment may be entered for said plaintiffs, according to the prayer in said complaint against said defendant, as fully empowered by said lease, a copy of which is attached to said complaint."

On the same day judgment was given against the defendant for restitution of the premises and costs of suit, based upon Foster's confession. A writ of restitution was issued thereon, and Armstrong was forthwith dispossessed. The defendant had no notice whatever of the pendency of the action until he was so dispossessed under the writ.

On the 2d day of September, the defendant gave notice of an appeal to the Probate Court, and filed an undertaking; but afterwards, on the same day, withdrew the appeal and all proceedings to perfect the same, and gave notice of a motion for a new trial before the Justice, founded upon affidavits. On the 5th day of September, the counsel of Paul & Bateman moved to have this motion dismissed on the ground that the Justice

had lost jurisdiction because of the appeal. The motion was denied. Afterwards the motion for a new trial was partially argued, and further argument continued until the 8th day of September, at which time a writ of *certiorari*, allowed by the Probate Judge, was served upon the Justice, on the part of the plaintiffs. Before return was made to this writ, the defendant also obtained a *certiorari* on his part, which was also served on the Justice and return made by him to the Probate Court. After a hearing the Court reversed the judgment of the Justice and all subsequent proceedings, adjudged them to be void, and ordered a writ of re-restitution to reinstate the defendant in the possession. This appeal is from that judgment.

The counsel for appellants insists that the respondent's only remedy was an appeal from the judgment of the Justice to the Probate Court; and in support of this view reference is made to the statute. (Laws of 1861, p. 384, sec. 403.)

The argument, as I understand, goes to the extent that a *certiorari* is absolutely inhibited to a party aggrieved in all proceedings or actions wherein a right of appeal is given. If this be a sound construction of the statute, the judgment of the Probate Court in this case should be reversed. I do not, however, so understand the law. Such a construction would often defeat the ends of justice.

The statute is remedial; designed to confine inferior tribunals and officers within the prescribed limits of their powers, and to correct, in a speedy and economical manner, any abuse of them that may prejudice others. It should receive such a fair and reasonable interpretation as will best secure these objects.

The writ of *certiorari* is declared to be "proper in all cases where an inferior tribunal exercising judicial functions has exceeded its jurisdiction, and there is no appeal or other plain, speedy and adequate remedy." Like the other remedy referred to in the statute, the appeal also must be adequate to the relief sought. Such a construction does no violence to the language or spirit of this section.

An appeal through the means of which errors, though manifest, cannot be corrected, would be a useless ceremony. The

law does not require vain things to be done; it does not limit a suitor to a process that is fruitless when it furnishes one that may prove available. But in this case an appeal to the Probate Court would not only be ineffectual, but would not lie, in my opinion.

The judgment of the Justice was in effect a judgment by default. Such judgment is not appealable. (20 John. Rep. 282; 17 Id., 469; 8 Wend. 219.)

A Court of appellate jurisdiction cannot reverse a judgment produced by the voluntary act of a party. (18 Wend. 169; 5 Denio, 385.) The Probate Court can only try the issues that have been tried in the Court below. (10 Cal. 19; 11 Cal. 328; 6 Cal. 666.)

In this cause there was no answer, no issue, either of law or fact—of course there could be no trial in the Probate Court. The statute says that, upon an appeal, the case shall be tried *de novo* in the appellate Court. That is, as I understand it, in the same manner, with the same effect, and upon the issues tried in the Court below.

The Court say in 10 Cal. Reports, p. 19: "The issue must be made in the Court of original jurisdiction. The County Court can only re-try the issue tried in the Court below." To the same effect is the case of *Adams* v. *Oakes,* 20 Johns. 282, *supra.*

The case before the Court is much stronger than any one of those cited.

If, as contended for by the appellants' counsel, the confession by Foster is a confession of Armstrong himself, and therefore good, most clearly Armstrong is thereby concluded. I am therefore satisfied that, upon principle as well as authority, the writ of *certiorari* was appropriate and legally issued. It remains, then, to be ascertained whether the judgment of the Justice is valid.

Counsel remind us that the examination of this question, "shall not be extended further than to determine whether the inferior tribunal has regularly pursued its authority," or (let me add), has had any authority.

It is said that this is a proceeding under section 651 of the Practice Act (Laws of 1861, p. 424), not partaking of the *quasi*

criminal character of the preceding sections of the statute, and consequently should not be construed as rigorously as a case wherein force constitutes the *gravamen* of the action.   I agree with counsel as to the statement of fact, but not in his conclusion.

In a similar case in New York, on *certiorari*, the Court say: " This being a summary proceeding in derogation of the common law, the statute should be strictly pursued; and that must appear affirmatively on the return.   Summary proceedings are in general open to objections for technical omissions, imperfections or defects in the return, *and proceedings under the Landlord and Tenant Act are not an exception.*" (*Farrington* v. *Morgan*, 20 Wend. 208, 209.)   Where a statute prescribes the mode of acquiring jurisdiction, that mode must be complied with or the proceedings will be a nullity.

In every form in which the question has arisen, it has been held that a statute authority by which a man may be deprived of his property or estate must be strictly pursued.   Again, it is said that the Justice has jurisdiction of the subject by law, and that by the terms of the lease, and the confession, he acquired jurisdiction of the person of the defendant; and that, in such case, intendments may be indulged to support the judgment of a Court of limited, as of a Court of general jurisdiction.   It is true that in actions of this nature a Justice has jurisdiction of the subject, yet only in a qualified sense.   He has power " to try, hear and determine" cases arising under the statute; but that power is conditional.   It flows from the provisions of the statute that confers it, upon the existence of conditions precedent.   For example: the conventional relation of landlord and tenant must exist as here—so the tenant must be holding over after the expiration of the term, or contrary to the covenants of the lease, etc.   In all such cases the lessor may proceed to dispossess the lessee; but he must take the steps pointed out by the law.   In the case before the Court it is alleged that the tenant has failed to observe or perform a covenant in the lease, to wit: By failing to pay a month's rent in gold or silver.   This is the only ground of complaint.   Admitting a breach of covenant, the right to sue does not arise *eo instanti* upon the breach,   The covenant is for the benefit

of the lessor, and he may waive it. If he does not, what does the law first require to be done. A demand in writing must be made upon the tenant that he deliver possession of the premises. If after such demand he refuse to surrender the possession for three days, then, *not before,* the Justice shall proceed in the same manner as in cases of forcible entry. This demand is indispensable; it is as necessary to be made before suit, as it is that the relation of landlord and tenant should exist. If omitted, the cause of action is not yet ripe, and the magistrate is not completely clothed with authority "to hear, try and determine it." In other words, the subject matter is not yet *in esse* upon which the power of the Justice can act or be exercised. Being thus essential, it should affirmatively appear on the face of the return that it was seasonably made. But it does not anywhere so appear; and indeed could not for the reason that the demand was never made, as appellants' counsel admits. I think no legal process can issue before this is done. Acts that are requisite to give a Court or Justice jurisdiction are distinguishable from the acts of such Court or Justice after jurisdiction *has been* already acquired.

The authorities say that when facts are required to be proved to warrant the issuing of process in a Court of special and limited jurisdiction (which a Justice's Court is—8 Cal. 340; 12 Id. 285; 15 Id. 301), if there be a defect of proof as to an essential point, the process will be void. (Vide *Miller* v. *Brinkerhoff,* 4 Denio, 118.)

Again, no summons was served or issued. The defendant had no day in Court. But the argument in answer to all this is, that the defendant waived the demand and also the summons, by the terms of the lease; and that the confession of judgment by Foster cured all defects, jurisdictional and otherwise.

The language of the lease, in its common acceptation, is broad enough to warrant this statement. Indeed, it will warrant an entry of judgment before there is any infraction of the agreement. But the argument proves too much if it proves anything, because it leads to the romantic conclusion that Paul and Bateman might, at any time, without even a complaint, whether any covenant was or was not broken, dispossess their

Paul *et al.* *v.* Armstrong.

tenant. All that is necessary is, that the attorney "nominated in the bond" confess judgment, and the work is accomplished.

Armstrong first learns his fate when the officer of the law appears and turns him out. The law is not chargeable with such an absurdity. But the learned counsel of the appellants saw the dilemma of the argument, and to escape it admitted, in answer to a question from the Bench, that it was necessary to file a complaint. If so, I think it would be equally necessary, certainly commendable, to give notice of some kind to the defendant. But it is difficult to see the necessity of a complaint, if, as contended for, the confession and judgment were authorized. A judgment upon confession authorized by law, and entered pursuant to its forms, in a proper Court, imparts jurisdiction of the subject matter and person, and concludes a party for ever. This would be its legal effect. Hence we may discard in this case all questions touching waiver of demand, summons and notice, about which much has been said. However, to recur to the admission of the learned counsel, if a complaint must have been filed, it must necessarily be a good one, and to be such must contain allegations of every fact requisite to establish a right to immediate possession. The Justice must have judicial knowledge by proof of them before he can act as has been before stated, in arguing the necessity of averring a written demand of possession. But aside from what has been thus far advanced, there still remains a grave question to be answered.

Is a judgment on confession in a Justice's Court authorized by law in actions brought under the Forcible Entry and Unlawful Detainer Act?

So far as I recollect and as my research has extended (and I have examined as far as the present limited means allow), I have been unable to find this precise point determined. In the absence, therefore, of any adjudication on the question, I can only resort to general principles, analogous cases, and to the statutes.

It is an acknowledged rule that Courts of Justices of the Peace are of special and limited jurisdiction. They can take nothing by intendment or implication. They are creatures of

the statute, and as they proceed they must move step by step with its requirements, or their acts will be void. In the statute under which this proceeding was instituted there is no provision made for entering judgment on confession; but there is another specific mode for rendering judgment therein prescribed. From this fact it would seem that the mode so pointed out should be pursued. However, by other provisions of law to which the attention of the Court has been directed, found in another chapter of the statutes, Justices of the Peace are authorized to enter judgment on confession in certain cases. And hence it is claimed that the power must also exist in the Justice as regards cases of the same character as the one now before the Court. This conclusion or inference does not necessarily or legitimately follow. In support of this view counsel for appellants cite a case from California, (9 Cal. 572). This case holds that the proper construction of the Act is that cases under it must be governed by the provisions of the Act itself, so far as they go, "and as to matters not embraced by the words of the Act, that the general rules governing proceedings in other Courts will apply." The reasonableness of this rule is sufficiently satisfactory, but I apprehend the rule does not bear out the argument, for the reason that the words of the Act of themselves are sufficient for the case under consideration, and there is no necessity to resort to the rules or practice of other Courts.

Again, if the provisions of law authorizing judgments by confession be invoked, it would seem necessary to follow the forms they prescribe. This confession ignores all forms. But what I consider conclusive upon this point is, that in the statute enumerating the subjects of which Justices' Courts shall have jurisdiction, the only authority given to the Justices to enter judgments on confession is in the following words:

"*Eighth*—To take and enter judgment on the confession of a defendant when the amount confessed does not exceed one hundred dollars." (Laws of 1861, p. 419, sec. 610, sub. 8.)

This evidently confines the jurisdiction to cases of money demands; else why omit all the other cases enumerated in the section, among which is classed and specified the action of forcible entry and unlawful detainer? "*Expressio unius est*

*exclusio alterius,*" is a well settled and recognized rule of statutory interpretation; it applies here.

This being the law, even the consent of Armstrong could not confer jurisdiction. Where a statute does not give jurisdiction, consent of parties cannot give it. The case of *Beach* v. *Nixon* (5 Selden's Rep. 35, in the Court of Appeals in New York), bears a strong resemblance to this case. Like this, that was a case of landlord and tenant, and removed by *certiorari.* The lease, after stating the conditions, had this clause:

"Lastly, it is expressly agreed between the parties aforesaid, that in case of the non-fulfillment or violation of any or either of the above conditions, the said hiring and the relation of landlord and tenant shall wholly cease and determine; and it is agreed that the said party of the first part, or his agent, shall be entitled to and recover immediate possession of said premises under the statute, for holding over after the expiration of the term without any notice other than the usual summons."

The tenant was removed under a warrant issued under the statute. The Court say to this:

"The point is, whether the covenant contained at the end of the lease either confers jurisdiction to proceed under the statutes in respect to summary proceedings, or precludes the lessee from objecting for the want of jurisdiction. The law, and not the consent of parties, confers jurisdiction, and that rule could have no practical force, if consent, given in whatever form, could preclude inquiry as to the lawfulness of the jurisdiction."

In New York an affidavit is used as a complaint with us. If the facts be denied by a counter affidavit of defendant, the points at issue shall be tried by a jury, and if the landlord succeeds, a warrant issues to remove the tenant. (2 R. S. 514, sec. 34.)

In *Benjamin* v. *Benjamin* (1 Selden, 385), a case under the Act, the Court say:

"This statutory remedy, by way of a summary proceeding, is in derogation of the common law remedy by action, and must be strictly pursued. A peculiar and limited jurisdiction is thereby conferred on certain magistrates, which can be

exercised only in the way prescribed.    *They* have no jurisdiction to try the cause, except by the mode pointed out.    The law has made no provision for dispensing with a jury in such cases, *even by express waiver or consent.*"

Under the general law in New York, as here, parties may dispense with juries, but cannot do so in special proceedings unless the right is expressly given by the particular statute under which the proceedings are conducted.    In a special case where the statute provided a trial by a jury of six persons, the parties consented to a trial by three, it was held to be error and the proceedings void.    (1 Hill, 343.)

In a case where the Justice had a written authority from a defendant to enter judgment against him, and the Justice did so, the authority was held insufficient and the judgment reversed because the party had not appeared in person before the Justice.    (6 J. R. 216.)

In *Tenney* v. *Filer* (8 Wend. 569), the defendant authorized the Justice to enter judgment against him, but did not appear before the Justice.    Judgment was entered, but it was reversed.    The Court say:

"The appearance and confession of the defendant was not an appearance and confession within the meaning of the statute."

These were cases where the law expressly authorized judgment by confession, but required an appearance in person. (To the same point, 15 J. R. 244, 476 ; 4 J. R. 243.)

In this view of the case, Foster's asserted authority disappears.    But if his authority were competent, it would not help the case, for the reason that he exceeded its scope.    It was special, particularly so under the circumstances surrounding this case, and every thing done under it must be considered as *strictissimi juris.*    He was bound to follow it to the letter.    A deviation from its terms rendered his acts void. This is elementary doctrine and does not require the citation of authorities.    The power is to "enter the appearance and to confess judgment in behalf of the parties of the first part *therefor.*"

It is not exactly stated what for he may confess judgment. Admit it means for the possession and (and this is a liberal

Paul *et al. v.* Armstrong.

construction) he could not go beyond that.    Yet he undertakes
to waive not only summons and notice, but also *time*.    Armstrong did not waive, or agree to waive time, nor expressly
authorize Foster so to do.    Admitting he would and could
waive summons and notice, it is not clear he would consent to
waive time.    At any rate, he did not.    It cannot be said that
time was of no importance.    It was of the greatest moment
to Armstrong.    The law gave him three days before summons
and ten days after.    As appears, he did not get an hour.    In
giving his assent to the entry of judgment, it accords with
reason and justice that he intended it to be entered when, by
law, it could have been if the legal course were pursued.
Those ten days, which the law in its indulgence allowed him,
he never waived.    But Foster, perhaps understanding its importance, gratuitously waived this legal privilege for the defendant.    Not alone that, but he consents to a judgment according
to the prayer of the complaint *and costs of suit*.    There was
no express authority to confess judgment for costs.    I cannot
see why Foster may not with equal right and propriety confess
judgment for damages, and yet his having done so could not
fail to shock the moral sense of every upright man.    The
record does not even show, by any legal proof, that the J. C.
Foster who confessed the judgment was a member of the law
firm of Robinson & Foster.    This should affirmatively appear.
The Justice could not take judicial notice of the fact.

Other points have been made and discussed, but it becomes
unnecessary to review them, as the questions already passed
upon dispose of the case.    The opinion of the Court is, that
the Justice had not acquired jurisdiction; that the judgment
rendered by him, and all proceedings subsequent, were without
sanction of law, and therefore void.    It is, however, insisted
on, that the Probate Court has no authority to issue a writ of
re-restitution, because the statute is silent on the subject, and
hence that the order for the writ is erroneous.    This point is
not tenable.    The Probate Court has jurisdiction to try and
determine questions arising on *certiorari,* " and to issue all
writs necessary and proper to the complete exercise of the
powers conferred upon it by this and other statutes,"—(Laws
of 1861, p. 418, sec, 608,)—" and may thereupon give judg-

ment, either affirming, or annulling, or modifying the proceedings below. (Laws of 1861, p. 385, sec. 410), *vide* also to this point, 3 Pick. 31; 10 Johns. Rep. 304–307.)

This power would seem to attach upon principle, as the power to annul would be barren and inefficient, unless the defendant could be restored to that of which he had been illegally deprived. But the very point has been judicially set at rest in our sister State. In the case of *Kennedy* v. *Harner*, (19 Cal. Rep. 374, 386), it appears the County Court, after setting aside the judgment of the Justice, ordered a writ of re-restitution, and the Supreme Court sustained the action of the Court below. The question seems too plain for argument. The right results from the principle that a power to decide litigated questions is accompanied by the power to make the decision effectual.

Finally, the earnestness and ability with which this cause has been argued by counsel of acknowledged candor and learning, have enlisted the utmost care in its examination. The result of which is, that the judgment of the Probate Court should be, in our opinion, in all things affirmed.

Judgment affirmed.

Justice BEATTY, having been counsel for the appellants, did not participate in the hearing.

By LEWIS, C. J.

I concur in the affirmance of the judgment below, but for reasons different from those given by Justice BROSNAN.